**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GERARDO MONTES,<br><br>                       Petitioner,<br><br>v.<br><br>JEFF MACOMBER, Warden,<br><br>                       Respondent. | Case No.: 15-cv-2377-H-BGS<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>**(2) ADOPTING REPORT AND RECOMMENDATION; AND**<br><br>**(3) DENYING CERTIFICATE OF APPEALABILITY** |

On October 19, 2015, Petitioner Gerardo Montes, a state prisoner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction for first degree murder. (Doc. No. 1.) On December 23, 2015, Respondent Jeff Macomber filed a response to the petition. (Doc. No. 5.) On March 15, 2016, Petitioner filed a traverse. (Doc. No. 11.) On September 19, 2016, the magistrate judge issued a report and recommendation, recommending that the Court deny the petition for writ of habeas corpus. (Doc. No. 12.) On October 30, 2016, Petitioner filed objections to the magistrate judge's

report and recommendation. (Doc. No. 16.) After careful consideration, the Court denies the petition for writ of habeas corpus, adopts the magistrate judge's report and recommendation, and denies a certificate of appealability.

**Background**

## I.    Factual History

The Court takes the following facts from the California Court of Appeal's opinion in Petitioner's direct appeal:[1]

> In the morning of August 29, 2010, a dove hunter scouting locations for the upcoming season discovered the body of 25-year-old Adrian Chee in an agricultural field near Winterhaven, California. Chee had been shot twice, once in the chest and once in the chin. The chest wound was fatal and caused Chee's death. Tire tracks were observed in the area surrounding the body, and Chee's leg appeared to have been run over. A vehicle also appeared to have damaged a nearby concrete canal wall. Near Chee's body, sheriff's department investigators found an open pack of Marlboro Red cigarettes.

> Investigators also found a used Marlboro Red cigarette butt between Chee's legs. The cigarette butt contained DNA from at least two male contributors. After testing, Montes could not be eliminated as a contributor to the DNA found on the cigarette butt. Such a situation would be expected to occur at random in 1 in 2.1 billion African Americans, 1 in 75 million Caucasians, and 1 in 46 million Hispanics.

> A witness living near the field in Winterhaven reported hearing a gunshot two nights prior to the discovery of Chee's body. Earlier on the night of the gunshot, Montes's house in Yuma, Arizona, was burglarized. Montes's wife, Sonia, called police and reported the burglary. When officers arrived, the door to Montes's house had been forced open and the interior was ransacked. The officers spoke with Montes's wife; Montes himself was not present. Electronics, jewelry, and some amount of cash had been stolen. Montes's wife later provided an itemized list to police for insurance purposes.

> Montes had been in prison with a man named Ernesto Valera, and after

---

[1] Lodg. No. 5. The Court gives deference to state court findings of fact and presumes them to be correct.

prison they remained friends. According to Valera, Montes called him on the night of the burglary. Valera asked Montes for some drugs, and Montes said he could get methamphetamine. A few hours later, Montes picked up Valera at Valera's house. Adrian Chee was with Montes in his Cadillac when Montes arrived at Valera's. Montes, Chee, and Valera bought some methamphetamine and proceeded to get high. They then drove in Montes's Cadillac to Paradise Casino in Winterhaven to meet Valera's girlfriend, Melissa Barraza. Barraza had additional methamphetamine, but the men had broken the pipe they used to smoke methamphetamines earlier. Montes, Chee, and Valera, along with Barraza, went to the house of Shavon Mendez, also in Winterhaven, to get another pipe. Mendez confirmed to investigators that Montes had been at her house that night between 2:00 a.m. and 5:00 a.m., but at trial she testified she was at her mother's house all weekend and did not see Montes.

After leaving Mendez's house, Montes asked Valera to drive and directed him to a nearby agricultural field. After they parked, Montes accused Chee of burglarizing his house and wearing his watch. They stepped out of Montes's car and began to argue. Valera got out as well, but Barraza remained in the car. Montes pulled out a gun and aimed it at Chee. Chee said that he was not scared and that Montes would not shoot him. Montes fired, first at Chee's chest and then, as Chee was falling, at Chee's face. After Chee fell, Montes knelt down and took the watch from Chee's wrist.

Montes told Valera to get back in the car. Valera got in the driver's seat, and Montes got in the back seat. Valera backed up, ran over Chee, and hit a concrete irrigation canal. Montes angrily told Valera that he would drive. Montes then drove to Barraza's house, and the group used methamphetamines again. Montes changed into clothes provided by Barraza, and Valera and Montes buried the gun in Barraza's backyard. Montes called his wife, and she came to Barraza's house. Montes told her what happened. Eventually they drove away, with Montes driving his Cadillac and his wife in a pickup truck.

The following day, Valera and Montes removed the tires from Montes's Cadillac and replaced them with used tires. Valera and Montes went to a local Walmart to look for tires, where they were captured on security cameras. Montes gave the old tires to Barraza to settle a drug-related debt. Barraza was later arrested on drug charges after trying to sell the tires to an undercover police officer. When questioned by investigators, Barraza recounted events of the evening, including that Montes had shot Chee. She said she did not report

3

the murder because Montes had threatened her and she was afraid.

Valera and Montes eventually retrieved the gun from Barraza's backyard, and Valera broke it into pieces. Valera and Montes contacted two cousins, Delia Hayes and Meredith Barley, and offered them drugs to take the gun to Mexico and throw it away. Barley agreed and attempted to drive Montes's Cadillac across the border with the gun. Valera and Montes followed her in a separate car. Valera and Montes were going to Mexico to escape the country. Barley was turned back at the border because the Cadillac had only temporary "paper" license plates. After exiting the other car, Montes and Valera made it to Montes's brother's house in San Luis, Mexico on foot.

Valera left the house at some point, and Montes's wife later convinced Montes to return home to Arizona. Valera, Hayes, and Barley eventually disposed of the gun in a ditch on the U.S. side of the border. When investigators recovered the gun, they found two long black hairs on the handle, but no useful forensic testing could be performed on the gun or the hairs. With information about his involvement, investigators interviewed Montes for approximately two hours. Montes confirmed that the Cadillac was his car and that no one other than he and his wife drove it. Montes denied knowing anyone in Winterhaven, and he said he had only been there in the morning to look for automotive parts at a junkyard. Montes was evasive when asked whether he knew Valera or Chee, but Montes eventually acknowledged that Chee looked familiar and that he knew Valera. Montes was also evasive when he was asked if he was at Paradise Casino at Winterhaven on the weekend of the murder. He initially said no, but then claimed he could have been there but been passed out. He reported drinking heavily. Montes denied that Chee had ever been in his car or that he was involved in Chee's murder.

Montes was arrested and charged, along with Valera, with Chee's murder. Barraza was charged with being an accessory after the fact. Valera later reached a cooperation agreement with the prosecution.

Valera agreed to testify at trial against Montes and plead guilty to being an accessory. The prosecution agreed to dismiss the murder charge against Valera. Barraza pled guilty to her accessory charge. At Montes's trial, the prosecution called Valera and Barraza, among other witnesses. While Valera provided substantive testimony in accordance with his cooperation agreement, Barraza claimed not to remember the events surrounding Chee's murder. She

4

was therefore impeached with her prior statements to investigators. Following Barraza's testimony, the prosecution uncovered a recorded telephone call between Montes, who was in custody, and an unknown female caller. The caller said she was in Salinas, California, and the conversation concerned a female witness who was being forced to come to testify at Montes's trial. Montes told the caller to tell the witness not to say anything. At the time of trial, Barraza lived in Salinas and was compelled to attend. Montes's defense at trial argued that Valera had murdered Chee.

Montes's wife, Sonia, testified that Montes was with her the night of Chee's shooting. She previously told investigators that she had some doubt as to where Montes was that night; he sometimes left during the middle of the night while she slept. She said she knew Chee, but she did not suspect Chee of burglarizing their house. She said that none of Montes's watches had been stolen and that she did not list any watches on the list of stolen items she submitted to police. She confirmed that Montes smoked Marlboro Red cigarettes, the brand found at the scene of Chee's murder. An accident reconstruction expert also testified that Montes's Cadillac could not have made the tire tracks found at the scene of the murder. Montes did not testify.

## II. Procedural History

On September 13, 2012, a jury convicted Petitioner of first degree murder in violation of California Penal Code § 187(a), and returned a true finding on the allegation that he personally used a firearm within the meaning of California Penal Code § 12022.53(b)-(d). (Lodg. No. 2-29 at RT 2318-19.) The trial court sentenced Petitioner to fifty years to life. (Lodg. No. 2-31 at RT 2462-63.)

Petitioner appealed his conviction, arguing that: (1) the trial court failed to give complete accomplice instructions; (2) the evidence was insufficient to corroborate accomplice testimony in support of his conviction for murder; (3) the trial counsel was ineffective for failing to request accomplice or other limiting instructions and failing to object to improper opinion testimony; (4) the cumulative effect of these errors requires reversal; and (5) the trial court erred in denying his motion for a new trial based upon juror misconduct and in failing to hold an evidentiary hearing. (Lodg. No. 3.) On April 8, 2014,

15-cv-2377-H-BGS

the California Court of Appeal affirmed the convictions. (Lodg. No. 5.) Petitioner then filed for a petition for review in the California Supreme Court raising the same claims. (Lodg. No. 6.) On July 23, 2014, the California Supreme Court summarily denied the petition. (Lodg. No. 7.) Petitioner did not file a state petition for writ of habeas corpus.

On October 19, 2015, Petitioner filed a federal habeas petition, pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner alleges violations of his constitutional rights on the same five grounds as raised in his direct appeal. (Doc. No. 1 at 13-19.) On December 23, 2015, Respondent filed a response to the petition. (Doc. No. 5.) On March 15, 2016, Petitioner filed a traverse. (Doc. No. 11.) On September 19, 2016, the magistrate judge issued a report and recommendation recommending that the Court deny the petition. (Doc. No. 12.) Petitioner filed an objection to the report and recommendation on October 30, 2016. (Doc. No. 16.)

## Discussion

## I.     Legal Standards

A federal court may review a petition for writ of habeas corpus by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); accord Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Habeas corpus is an "extraordinary remedy" available only to those "persons whom society has grievously wronged." Juan H. v. Allen, 408 F.3d 1262, 1270 (9th Cir. 2005) (quoting Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993)). Because Petitioner filed this petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the petition. See Lindh v. Murphy, 521 U.S. 320, 327 (1997); Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004). AEDPA creates a highly deferential standard toward state court rulings. Woodford v. Viscotti, 537 U.S. 19, 24 (2002); see also Womack v. Del Papa, 497 F.3d 998, 1001 (9th Cir. 2007) (citing Woodford, 537 U.S. at 24).

15-cv-2377-H-BGS

Federal habeas relief is available only if the result reached by the state court on the merits is "contrary to," or "an unreasonable application" of United States Supreme Court precedent, or if the adjudication is "an unreasonable determination" based on the facts and evidence. 28 U.S.C. §§ 2254(d)(1)-(d)(2). A federal court may grant habeas relief if a state court either "applies a rule that contradicts the governing law set forth in [the United States Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Early v. Packer, 537 U.S. 3, 8 (2002).

"[R]eview under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). In determining whether a state court decision is contrary to clearly established federal law, the Court looks to the state court's last reasoned decision. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where there is an unexplained decision from the state's highest court, the court "looks through" to the last reasoned state judgment and presumes that the unexplained opinion rests upon the same ground. See, e.g., Brumfield, 135 S. Ct. 2269, 2276 (2015).

Even if a federal habeas petitioner has established that a constitutional error occurred, the petitioner is not entitled to habeas relief based on a trial error unless the petitioner can establish that the error "resulted in 'actual prejudice.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); accord Ayala, 135 S. Ct. 2187, 2197 (2015). "Under that standard, an error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112, 116 (2007) (internal quotation marks and citation omitted). Further, "[t]here must be more than a 'reasonable possibility' that the error was harmful." Ayala, 135 S. Ct. at 2198.

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to any

7

1  portion of the magistrate's report, the district court reviews de novo those portions of the

2  report. Id.

3  **II.     Analysis**

4       **A.     Instructional Error Claim**

5       Petitioner alleges that the trial court failed to give complete accomplice instructions,

6  violating Petitioner's due process rights. (Doc. No. 1 at 13-14.) Petitioner contends that the

7  trial court erred in not providing the jury with the CALCRIM 344 instruction that Barraza

8  could be found to be an accomplice and that her testimony might therefore require

9  corroboration. Petitioner further argues that CALCRIM 301 should have been modified to

10 reflect that such corroboration may be necessary.

11      "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v.

12 McGuire, 502 U.S. 62, 67 (1991) (internal quotation marks omitted). Therefore, claims of

13 error concerning state jury instructions are generally not cognizable on federal habeas

14 review. See Gilmore v. Taylor, 508 U.S. 333, 343 (1993); see also Menendez v. Terhune,

15 422 F.3d 1012, 1029 (9th Cir. 2005) ("Any error in the state court's determination of

16 whether state law allowed for an instruction . . . cannot form the basis for federal habeas

17 relief."). But federal habeas relief is available for a claim based on instructional error when

18 a petitioner demonstrates that "[an] ailing instruction by itself so infected the entire trial

19 that the resulting conviction violates due process." Estelle, 502 U.S. at 72. In determining

20 whether a due process violation occurred, the court must examine the misconduct in the

21 context of the entire proceedings. See Donnelly v. DeChristoforo, 416 U.S. 637, 643

22 (1974). Moreover, under AEDPA's highly deferential view, a federal habeas court may not

23 grant habeas relief unless the state court's harmless error determination is so unreasonable

24 that no fair minded jurist could agree with it. See Davis v. Ayala, 135 S. Ct. 2187, 2199

25 (2015).

26      Here, the trial court did not violate due process. The Court of Appeal concluded that

27

28
8

the trial court "had no *sua sponte* duty to provide an accomplice instruction regarding Barraza." (Lodg. No. 5 at 8.) The Court of Appeal explained that "Barraza was an accessory to Chee's murder, not an accomplice" because "(1) Barraza was present with Montes, Valera, and Chee before Chee was shot; (2) Barraza witnessed Chee's shooting; and (3) Barraza aided Montes and Valera after the shooting by providing Montes with fresh clothes, allowing Valera to bury the gun in her backyard, and helping dispose of the tires on Montes's Cadillac." (Id. at 8-9.) The Court of Appeal found that there was no evidence that Barraza was aware of a plan to kill Chee, that Barraza agreed before the murder to assist Montes or Valera in disposing of the gun, or that Barraza consciously failed to warn Chee of a plan to murder him. (Id. at 9.) (citing People v. DeJesus, 38 Cal. App. 4th 1, 24 (1995)). This Court agrees with the Court of Appeal. Under AEDPA's deferential standard, the trial court's instruction had a legitimate basis and did not violate due process.

Even if failing to provide an accomplice instruction regarding Barraza was an error, the Court of Appeal found that this error was harmless because there was sufficient independent evidence to corroborate Barraza's statements. (Id. at 10.) This evidence included the following: (1) Shavon Mendez confirmed to investigators that Montes was in Winterhaven on the night of Chee's murder, that Montes came to her house near the field where Chee was eventually killed, and that Montes attempted to borrow a pipe to smoke methamphetamines; (2) the cigarette butt found between Chee's legs effectively matched Montes' DNA and placed Montes at the scene of Chee's murder; (3) the damage to the concrete canal wall near Chee's body and the damage to the undercarriage of Montes' Cadillac also placed Montes at the scene of Chee's murder; and (4) testimony by Delia Hayes established that Montes was involved in the exchange of drugs to help dispose of the gun after the murder. (Lodg. No. 5 at 12.) Given this evidence, the Court of Appeal's determination of harmless error was not an unreasonable application of established federal authority. The Court denies this claim of the petition.

9

15-cv-2377-H-BGS

## B.   Insufficient Corroborating Evidence Claim

Petitioner alleges that, as a matter of due process, the evidence was insufficient to corroborate Valera and Barraza's accomplice testimony in support of his conviction for murder. (Doc. No. 1 at 14-15.) The California Penal Code requires corroboration of accomplice testimony. Cal. Penal Code § 1111. The Court of Appeal found that the prosecution presented sufficient independent evidence to corroborate Valera and Barraza's testimony. (Lodg. No. 5 at 12.)

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Federal habeas review of a state court's finding is limited to determining whether the finding was "so arbitrary or capricious as to constitute an independent due process . . . violation." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

The California Court of Appeal relied on four independent, non-accomplice sources which sufficiently corroborated the accomplice testimony. These sources included the following: (1) Shavon Mendez confirmed to investigators that Montes was in Winterhaven on the night of Chee's murder, that Montes came to her house near the field where Chee was eventually killed, and that Montes attempted to borrow a pipe to smoke methamphetamines; (2) the cigarette butt found between Chee's legs effectively matched Montes' DNA and placed Montes at the scene of Chee's murder; (3) the damage to the concrete canal wall near Chee's body and the damage to the undercarriage of Montes' Cadillac also placed Montes at the scene of Chee's murder; and (4) Delia Hayes testified that Montes was involved in the exchange of drugs to help dispose of the gun after the murder. (Id. at 12.)

These separate sources provided important details which tended to connect Montes to the commission of the crime. The corroboration requirement of California Penal Code § 1111 was met, and the application of state law was neither arbitrary nor capricious in this

15-cv-2377-H-BGS

instance. <u>Lewis</u>, 497 U.S. at 780. Accordingly, the Court denies this claim of the petition.[2]

### C.    Ineffective Assistance of Counsel Claim

Petitioner alleges that he was provided with ineffective assistance of counsel in violation of the Sixth Amendment because counsel failed to: (1) request accomplice instructions regarding Barraza, (2) request a limiting instruction for Valera's guilty plea to his accessory charge, and (3) make an evidentiary objection concerning a sheriff's department investigator's testimony. (Doc. No. 1 at 15-16.) The Sixth Amendment entitles criminal defendants to the effective assistance of counsel at all critical stages of a criminal proceeding. <u>Lafler v. Cooper</u>, 566 U.S. 156, 164-166 (2012). In order to prove a Sixth Amendment ineffective assistance of counsel claim, the petitioner must establish (1) that counsel's performance was deficient, and (2) that he was prejudiced by counsel's deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 692 (1984); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009).

In order to satisfy the deficiency prong of the test, the petitioner must show his counsel's performance "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Id.</u> "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689; <u>see also</u> <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010) ("Surmounting <u>Strickland</u>'s high bar is never an easy task."). In order to satisfy the prejudice prong of the test, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

---

[2] Valera and Barraza were the only witnesses who connected Petitioner to the shooting. Both Valera and Barraza had criminal histories and suffered from drug addiction. (Doc. No. 1 at 14-15.) These issues create an additional reason to require corroboration. But the testimony was sufficiently corroborated; therefore, these issues do not raise a potential due process violation.

15-cv-2377-H-BGS

probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

In evaluating an ineffective assistance of counsel claim raised in a § 2254 habeas petition, a federal habeas court "must take a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" <u>Pinholster</u>, 563 U.S. at 190 (citations omitted); <u>see also</u> <u>Richter</u>, 562 U.S. at 105 ("The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential.'"). Thus, a federal habeas court's review of an ineffective assistance of counsel claim in a § 2254 habeas petition is "'doubly deferential.'" <u>Pinholster</u>, 563 U.S. at 190. The reviewing court must determine "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Richter</u>, 562 U.S. at 105.

First, Petitioner claims that his counsel was ineffective because she failed to request accomplice instructions regarding Barraza. But Petitioner has not shown prejudice, particularly in light of the Court of Appeal's conclusion that there was sufficient independent evidence to corroborate Barraza's statement. (Lodg. 5 at 10.) Furthermore, this Court notes, as the Court of Appeal's noted, that there was no evidence that Barraza was aware of a plan to kill Chee, that Barraza agreed before the murder to assist Montes or Valera in disposing of the gun and other evidence, or that Barraza consciously failed to warn Chee of a plan to murder him. (Lodg. 5 at 9.) Based on this, there is no reasonable possibility that the result of Petitioner's trial would have been different had trial counsel made a request for accomplice instructions. <u>See</u> <u>Strickland</u>, 466 U.S. at 694. Accordingly, the Court denies this claim of the petition on this basis.

Second, Petitioner claims that his counsel was ineffective because she failed to request a limiting instruction regarding the guilty pleas of Barraza and Valera. The Court of Appeal determined that the guilty pleas were likely inconsequential given the substance of the testimony regarding Montes's role in the murder and their activities afterwards.

12

(Lodg. 5 at 14.) This Court agrees. Given the corroborating evidence and the substance of the testimony, there is no reasonable possibility that the result of Petitioner's trial would have been different had Petitioner's counsel requested the limiting instruction. See Strickland, 466 U.S. at 694. Accordingly, the Court denies this claim of the petition on this basis.

Third, Petitioner claims that his counsel was ineffective concerning an evidentiary objection about a sheriff's department investigator's testimony. The Attorney General acknowledged in the lower court proceedings that the investigator's comment on Mendez's truthfulness was inadmissible. (Lodg. No. 5 at 15.) But the Court of Appeal held that "defense counsel's failure to object is just the type of tactical decision that will rarely give rise to reversible error." (Id.) (citing People v. Hart, 20 Cal. 4th 546, 623). The Court agrees. Thus, Petitioner cannot establish that his attorney acted unreasonably in choosing not to object. See Strickland, 466 U.S. at 689. Even if Petitioner's attorney should have objected to the testimony, Petitioner has not shown that he was prejudiced by this failure. The jury was already presented with the conflicting statements from Mendez and the investigator. There was also other evidence in the record to support the jury's conclusion regarding Petitioner's whereabouts that night. He has not shown that but for counsel's failure to object, the result of the trial would have been different. See Strickland, 466 U.S. at 694. Accordingly, the Court denies this claim of the petition on this basis.

### D.    Cumulative Effect of the Errors Claim

Petitioner alleges that the cumulative effect of several purported errors requires reversal. (Doc. No. 1 at 16-17.) Petitioner claims that the trial court failed to give complete accomplice instructions, that the evidence was insufficient to corroborate accomplice testimony in support of his conviction of murder, and that his trial counsel was ineffective for failing to request accomplice or other limiting instructions and failing to object to improper opinion testimony. (Doc. No. 1 at 16-17.)The combined effect of multiple errors

13

violates due process if it "renders the resulting trial fundamentally unfair." <u>Parle v. Runnels</u>, 505 F.3d 922, 927 (9th Cir. 2007) (citing <u>Chambers v. Mississippi</u>, 410 U.S. 284, 298, 302-03 (1973)). Cumulative error warrants habeas relief only where the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." <u>Parle</u>, 505 F.3d at 927 (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)).

The Court concludes that these purported errors did not have a "substantial and injurious effect or influence on the jury's verdict." <u>See</u> <u>Parle</u>, 505 F.3d at 927. The evidence at trial included: (1) Shavon Mendez confirmed to investigators that Montes was in Winterhaven on the night of Chee's murder, that Montes came to her house near the field where Chee was eventually killed, and that Montes attempted to borrow a pipe to smoke methamphetamines; (2) the cigarette butt found between Chee's legs effectively matched Montes' DNA and placed Montes at the scene of Chee's murder; (3) the damage to the concrete canal wall near Chee's body and the damage to the undercarriage of Montes' Cadillac also placed Montes at the scene of Chee's murder; and (4) Delia Hayes testified that Montes was involved in the exchange of drugs to help dispose of the gun after the murder. (Lodg. No. 5 at 12.) This evidence corroborates Valera's testimony, and connects Montez to the murder. As a result, the purported errors could not have substantially affected the jury's verdict given the weight of the accumulated evidence. Accordingly, the Court denies this claim of the petition.

## E.    Juror Misconduct

Petitioner alleges that a juror misconduct issue violated his rights to a fair trial and due process. (Doc. No. 1 at 17-19.) Jurors purportedly discussed in deliberation the fact that Petitioner did not testify. (Lodg. No. 5 at 16.) The Sixth Amendment's guarantee of a trial by jury requires that the jury base its verdict on the evidence presented at trial. <u>Turner v. Louisiana</u>, 379 U.S. 466, 472-73 (1965). A jury's exposure to extrinsic evidence deprives a defendant of the rights to confrontation, cross-examination, and assistance of counsel

embodied in the Sixth Amendment. <u>Lawson v. Borg</u>, 60 F.3d 608, 612 (9th Cir.1995). "Evidence not presented at trial, acquired through out-of-court experiments or otherwise, is deemed 'extrinsic.'" <u>United States v. Navarro-Garcia</u>, 926 F.2d 818, 821 (9th Cir.1991).

Petitioner's decision not to testify is not extrinsic evidence. <u>Raley v. Ylst</u>, 470 F.3d 792, 803 (9th Cir. 2006) (affirming denial of petition for habeas corpus where jurors considered petitioner's decision not to testify in his own defense). Although the jury's discussion of this issue violated the trial court's instructions, what happened in the courtroom was a part of the trial, not extrinsic to it. Generally, the Court may not inquire into a jury's deliberations concerning the evidence at trial. <u>Belmontes v. Brown</u>, 414 F.3d 1094, 1124 (9th Cir. 2005), <u>rev'd on other grounds</u>; <u>Ayers v. Belmontes</u>, 549 U.S. 7 (2006). Furthermore, "intrinsic jury processes will not be examined on appeal and cannot support reversal."[3] <u>United States v. Bagnariol</u>, 665 F.2d 877, 887 (9th Cir. 1981).

Additionally, the Court of Appeal concluded that any potential misconduct in discussing the fact that Petitioner did not testify was harmless. "Any discussion of [Petitioner's] failure to testify was brief, isolated, and promptly cut off by reference to the court's jury instructions precluding such discussions." (<u>See</u> Lodg. No. 5 at 20.) The jury foreman and other jurors reminded the jury that they should not consider this fact in their deliberations. (<u>Id.</u>) This Court agrees. The Court of Appeal's determination of harmless error was not an unreasonable application of established federal authority.

Petitioner also alleges that the trial court violated his right to due process because it failed to conduct a full hearing on the jury misconduct issue. However, due process does not require a hearing any time evidence of possible juror bias is brought to light. <u>Sims v. Rowland</u>, 414 F.3d 1148, 1155 (9th Cir. 2005) (citing <u>Tracey v. Palmateer</u>, 341 F.3d 1037,

---

[3] The trial court can consider evidence of a juror's statement and any resulting denial of the jury trial guarantee where a juror makes a clear statement indicating that racial stereotypes or animus were a significant motivating factor in the juror's vote to convict. <u>Pena-Rodriguez v. Colorado</u>, 137 S. Ct. 855, 869 (2017).

15-cv-2377-H-BGS

1044 (9th Cir. 2003)). The record of the hearing on defense counsel's motion for a new trial indicates that the trial court carefully considered the impact of the juror misconduct. The trial court reviewed detailed declarations from each of the jurors on Petitioner's trial that both parties submitted. Accordingly, it was not an unreasonable application of established federal authority for the Court of Appeal to affirm the trial court's decision to deny an evidentiary hearing.

## VII. Certificate of Appealability

A certificate of appealability may issue only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has denied the petitioner's constitutional claims on the merits, a defendant satisfies the above requirement by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court concludes that reasonable jurists would not find the Court's assessment of Defendant's claims debatable or wrong. Accordingly, the Court declines to issue a certificate of appealability.

## Conclusion

For the reasons stated, the Court denies Petitioner's § 2254 petition for habeas corpus and adopts the magistrate judge's report and recommendation. (Doc. Nos. 1, 12.) Additionally, the Court denies Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

DATED: April 10, 2017

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

16

15-cv-2377-H-BGS